**2023 IL 128077**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 128077)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
JOHNNY ENGLISH, Appellant.

*Opinion filed June 15, 2023.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Cunningham, and
Rochford concurred in the judgment and opinion.

Justice O'Brien dissented, with opinion.

## OPINION

¶ 1    Petitioner Johnny English filed a motion for leave to file a successive
postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS
5/122-1 *et seq.* (West 2018)). The trial court denied petitioner's motion on August
3, 2020, which made his notice of appeal due in the circuit court by September 2,

2020. Petitioner filed a notice of appeal in the circuit court that was file-stamped on September 10, 2020. The envelope containing the notice of appeal had a postage meter stamp dated September 1, 2020. Under this court's version of the mailbox rule (Ill. S. Ct. R. 373 (eff. July 1, 2017)), the notice of appeal was timely if the postage meter stamp is accepted to prove the "time of mailing." The appellate court dismissed petitioner's appeal for lack of jurisdiction, holding that the postage meter stamp was insufficient to prove that petitioner mailed his notice of appeal before the due date. 2021 IL App (1st) 201016-U, ¶¶ 38-41.

¶ 2       We allowed petitioner's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021). For the following reasons, we agree with the appellate court and hold that the sole means of establishing "time of mailing" under Rule 373 in the case of a *pro se* incarcerated litigant is by certification as described in Rule 12(b)(6) (Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017)). Thus, we affirm the appellate court's judgment.

¶ 3                                 I. BACKGROUND

¶ 4       Because this case involves only a question of the appellate court's jurisdiction to hear petitioner's appeal, we recite only those facts relevant to our disposition. The facts of the offense and sentencing are fully set out in the appellate court's decision affirming petitioner's conviction and sentence on direct appeal (*People v. English*, 302 Ill. App. 3d 1090 (table) (unpublished order under Illinois Supreme Court Rule 23)).

¶ 5       In 1995, then-18-year-old petitioner was charged with, among other things, armed robbery, first degree murder, and attempted first degree murder for his involvement in the death of Frank Klepacki and the shooting of Casey Klepacki. After a bench trial, petitioner was found guilty of the offenses. Petitioner was sentenced to an extended term of 70 years in prison for first degree murder, to be served concurrently with 30-year sentences for attempted first degree murder and armed robbery. Defendant filed a direct appeal, an initial postconviction petition (*People v. English*, 346 Ill. App. 3d 1174 (table) (unpublished order under Illinois Supreme Court Rule 23)), and a successive postconviction petition (*People v. English*, 403 Ill. App. 3d 121 (2010))), all to no avail.

- 2 -

¶ 6 On July 10, 2020, petitioner filed the *pro se* motion for leave to file a successive postconviction petition underlying this appeal. Petitioner argued that his sentence was unconstitutional based on changes in the law regarding the sentencing of juvenile and young adult offenders. On August 3, 2020, the trial court denied petitioner's motion for leave to file in a written order.

¶ 7 Defendant filed a notice of appeal, which was file-stamped by the clerk on September 10, 2020. The envelope containing the notice of appeal bears a postage meter stamp with the date of September 1, 2020. Also with the notice of appeal was a "Notice of Mailing/Filing," which provided: "I, Johnny English, state that I have mailed the attached successive postconviction petition on August 20, 2020 by depositing the said in the mail drop box at Graham Correctional Center Mail Drop Box." The notice also stated that the notice of appeal was mailed to the State and circuit clerk of Cook County at provided addresses.

¶ 8 On September 18, 2020, the Office of the State Appellate Defender was appointed to represent petitioner on appeal. As part of the appointment order, the trial court stated that the notice of appeal was filed on September 10, 2020, which was "timely per proof of service." Citing the trial court's order, petitioner, in his opening brief in the appellate court, stated that his notice of appeal was timely filed "pursuant to the mailbox rule."

¶ 9 The appellate court disagreed. The court held that it was without jurisdiction to consider petitioner's appeal "absent the certification of proof of service" described in section 1-109 of the Code of Civil Procedure. 2021 IL App (1st) 201016-U, ¶ 38. The court noted the amendments to Rule 373, which eliminated postmarks as proof of mailing " 'entirely, even legible ones.' " *Id.* ¶ 36 (quoting *People v. Tolbert*, 2021 IL App (1st) 181654, ¶ 20). The court concluded that "a postmark alone is insufficient to confer jurisdiction." *Id.* ¶ 37. The court dismissed petitioner's appeal. *Id.* ¶ 42. This court granted petitioner's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 10 II. ANALYSIS

¶ 11 Petitioner argues that the postage meter stamp showing that he placed his notice of appeal in the mail prior to the due date was sufficient to prove that he filed his

notice of appeal timely, thereby establishing jurisdiction in the appellate court. Petitioner concedes that he did not file a certificate as required by our Rules 373 and 12(b)(6) but argues that equity requires that we accept the dated postage meter stamp as the "time of mailing." The State concedes that petitioner placed his notice of appeal in the mail prior to the due date but argues that petitioner's proof of mailing was insufficient under Rule 12. The sole issue is whether a dated postage meter stamp is sufficient to prove "time of mailing" under our rules, which is the only way the appellate court could have obtained jurisdiction in this case.

¶ 12                              A. Standard of Review

¶ 13        "The determination of whether the appellate court had jurisdiction to consider an appeal is a question of law, which we review *de novo*." *People v. Vara*, 2018 IL 121823, ¶ 12. The construction of our rules is also a question of law subject to *de novo* review. *People v. Casler*, 2020 IL 125117, ¶ 22. Our rules are to be interpreted in the same manner as statutes. *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010). Our rules "have the force of law" and are "not aspirational." *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). The primary concern is to give effect to our intent, most often through the "plain and ordinary meaning" of the rule. *People v. Glisson*, 202 Ill. 2d 499, 504 (2002). When a rule is "plain and unambiguous, we may not depart from [its] terms by reading into it exceptions, limitations, or conditions [this court] did not express, nor may we add provisions not found in the [rule]." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24.

¶ 14                      B. Supreme Court Rules Governing the
                              Filing of a Notice of Appeal

¶ 15        The timely filing of a notice of appeal is the only jurisdictional step in the perfection of an appeal. Ill. S. Ct. R. 606(a) (eff. July 1, 2017). Rule 606(b) provides that "the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from." Ill. S. Ct. R. 606(b) (eff. July 1, 2017). Rule 373 provides that the "time of filing" is the date the notice of appeal is "actually received" by the clerk of the circuit court. Ill. S. Ct. Rs. 373, 612(b)(18) (making Rule 373 applicable to criminal appeals) (eff. July 1, 2017). Under this court's version of the mailbox rule, if the notice of appeal is received by

- 4 -

the clerk after the due date, "the time of mailing by an incarcerated, self-represented litigant shall be deemed the time of filing." Ill. S. Ct. R. 373 (eff. July 1, 2017). Rule 373 further provides that "[p]roof of mailing shall be as provided in Rule 12." *Id.*

¶ 16    Rule 12(b)(6) provides:

"Service is proved ***

*       *       *

    *** in case of service by mail by a self-represented litigant residing in a correctional facility, by certification under section 1-109 of the Code of Civil Procedure of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017).

Section 1-109 of the Code of Civil Procedure requires a person "having knowledge of the matters stated in a pleading, affidavit or other document" to

"subscribe to a certification in substantially the following form: Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true." 735 ILCS 5/1-109 (West 2018).

When completed, the verification has the "same force and effect as though subscribed and sworn to under oath." *Id.*

¶ 17                    C. Our Precedent on the Mailbox Rule

¶ 18    We have twice construed the provisions constituting our mailbox rule. In *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 216 (2009), we held that a cover letter that listed a date within the time for filing was insufficient proof under Rule 373 to prove the "time of mailing." We noted that the letter did not contain "an affidavit or a certificate and nothing [was] *certified* or *sworn to*." (Emphasis in original) *Id.* This court reasoned that, while Rule 373

relaxed the 30-day deadline where a party elects to mail their notice of appeal, the party must comply with Rule 12 to do so. *Id.* This court concluded that where there is "no proof of mailing on file, there is nothing in the record to establish the date the document was timely mailed to confer jurisdiction on the appellate court." *Id.* The import of *Secura* is that litigants cannot supply proof of mailing in ways other than those expressly listed in Rules 373 and 12.

¶ 19　　In *Huber v. American Accounting Ass'n*, 2014 IL 117293, ¶¶ 17, 19, we similarly rejected the plaintiff's contention that a label from an Automated Postal Center (APC), described as a self-service kiosk within a United States Post Office lobby, was sufficient to establish proof of mailing under Rules 373 and 12. This court focused on the fact that the label showed only the date of sale, not the date of mailing. *Id.* ¶ 18. This court continued that it did not need to address whether Rule 12 allowed for other methods of proof of mailing because, at best, the APC label indicated that the plaintiff may have mailed his notice of appeal on time. *Id.* We must now resolve the question left open in *Huber*, which is whether Rules 373 and 12 allow for any form of proof other than those expressly listed.

¶ 20　　　　　　　　　　D. Postmark Versus Postage Meter Stamp

¶ 21　　Neither *Secura* nor *Huber* involved a postmark or postage meter stamp. Thus, we briefly discuss each and their relevance to this issue. A postmark is " 'an official postal marking on a piece of mail; *specif* : a mark showing the name of the post office and the date and sometimes the hour of mailing and often serving as the actual and only cancellation.' " *Wickman v. Illinois Property Tax Appeal Board*, 387 Ill. App. 3d 414, 417 (2008) (quoting Webster's Third New International Dictionary 1772-73 (1993)). The United States Postal Service (USPS) defines a postmark as "an official Postal Service™ imprint applied in black ink on the address side of a stamped mailpiece. A postmark indicates the location and date the Postal Service accepted custody of a mailpiece, and it cancels affixed postage." U.S. Postal Serv., Handbook PO-408–Area Mail Processing Guidelines, § 1-1.3 (2008), https://d1ocufyfjsc14h.cloudfront.net/sites/default/files/po-408_area_ mail_processing_guidelines_3-08_7.92_mb.pdf [https://perma.cc/Q44C-29UE].

¶ 22　　A "postage meter" is in the category of "postage evidencing systems," defined as "a device or system of components a customer uses to print evidence that postage

- 6 -

required for mailing has been paid." Domestic Mail Manual, Mailing Standards of the United States Postal Service, U.S. Postal Serv., § 604.4.1.1, https://pe.usps.com/text/dmm300/604.htm#ep1080496 (last visited Apr. 26, 2023) [https://perma.cc/5XPB-UTD3] (hereinafter DMM). "Private meter postmarks are official postmarks imprinted under license from the United States Postal Service [citation], and metered mail is entitled to all privileges applying to the various classes of mail." *Bowman v. Administrator, Ohio Bureau of Employment Services*, 507 N.E.2d 342, 344 (Ohio 1987) "The USPS licenses private parties to use postage meters manufactured by certain companies, including Pitney Bowes, Inc., to place a mark on mailed items indicating postage has been paid, provided the licensees agree to abide by all the rules and regulations governing the use of the meters." *Chevron U.S.A., Inc. v. Department of Revenue*, 2007 WY 43, ¶ 12, 154 P.3d 331; DMM § 604.4.2.1.

¶ 23    "The United States Postal Service requires the date shown on private meter postmarks to be the actual date of deposit of mail (or the next scheduled collection day)." *Bowman*, 507 N.E.2d at 344; DMM § 604.4.6.2. "If the wrong date appears, a .00 postage meter impression with the correct date is stamped on the envelope by the post office." *Bowman*, 507 N.E.2d at 344; DMM § 604.4.5.1. "Otherwise, metered mail is not canceled or postmarked by the Postal Service." *Bowman*, 507 N.E.2d at 344. An entity may be denied use of a postage meter if it fails to comply with these mailing standards. DMM § 604.4.2.4.

¶ 24    As just discussed, postage meters are heavily regulated within the USPS. The DMM has been incorporated into the Code of Federal Regulations and, thus, has the force and effect of law. 39 C.F.R. § 111.1 (2021); *People v. Molnar*, 222 Ill. 2d 495, 508 (2006) ("administrative rules and regulations have the force and effect of law"). We take judicial notice of the DMM. See *Pierce v. Board of Education of Chicago*, 69 Ill. 2d 89, 93-94 (1977).

¶ 25    We agree with the vast majority of courts, including our appellate court, that a legible date on a postage meter stamp is of similar evidentiary value as a postmark. See *Tolbert*, 2021 IL App (1st) 181654, ¶ 14 ("Given the similarities between postmarks and postage meters, a determination regarding the evidentiary sufficiency of postmarks would lend support to a similar finding with respect to postage meters."); *Lozier Corp. v. Douglas County Board of Equalization*, 829

N.W.2d 652, 660 (Neb. 2013) ("We believe these regulations are sufficient to qualify a postage meter stamp as satisfactory evidence of the date of mailing."). To the extent courts have held otherwise, largely because a private entity could manipulate the date on the postage meter stamp (see *Smith v. Idaho Department of Labor*, 218 P.3d 1133, 1136 (Idaho 2009)), those concerns are not present in the case of an incarcerated litigant who has no access to the postage meter itself. Thus, we accept as fact that petitioner placed his notice of appeal in the institutional mail on September 1, 2020, a day before it was due in the circuit court.

¶ 26                 E. Petitioner Failed to Comply With Our Rules

¶ 27        That leaves the question of whether petitioner complied with our rules. Our appellate court is split on whether a postmark or postage meter stamp can prove "time of mailing." Some decisions have restrained their analysis to the plain language of our rules. In *People v. Lugo*, 391 Ill. App. 3d 995, 998 (2009) (quoting Ill. S. Ct. R. 373 (eff. Feb. 1, 1994)), the court noted the mandatory nature of Rule 373's provision that " '[p]roof of mailing *shall* be as provided in Rule 12(b)(3).' " (Emphasis in original.) The court continued that Rule 12 allows for proof of mailing only by certificate or affidavit of mailing. *Id.* The rule does not provide for proof in any other form. *Id.* The court concluded that, "if proof of mailing must be by certificate or affidavit of mailing, then it cannot be by postmark, as a postmark is neither a certificate nor an affidavit of mailing." *Id.*; see also *Tolbert*, 2021 IL App (1st) 181654, ¶ 19 ("We agree with the reasoning in *Lugo*, which for its conclusion relied on well-settled principles of statutory construction.").

¶ 28        The appellate court in *People v. Hansen*, 2011 IL App (2d) 081226, ¶ 13, found the *Lugo* court's interpretation of Rules 373 and 12 to be "too literal and narrow." The court reasoned that, where "there is a timely and legible postmark, an affidavit or a certification of mailing is a corroborative redundancy." *Id.* ¶ 14.

> "Requiring a court to overlook a clearly legible postmark showing that a document was processed by a disinterested third party, such as the post office, on or before the date by which the document was required to be mailed is to disregard the best, most competent evidence of the latest date of mailing consistent with the 'pro-mailing policy of Rule 373.' " *Id.* (quoting *Harrisburg-*

> *Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326, 341-42 (1989)).

See also *People v. Humphrey*, 2020 IL App (1st) 172837, ¶ 21 (holding that the petitioner "timely filed his notice of appeal because the post office, a disinterested third party, legibly postmarked the envelope within the 30-day filing deadline for the notice of appeal").

¶ 29    We agree with the former line of cases and conclude that petitioner failed to comply with Rule 12(b)(6). Thus, the appellate court was correct that it lacked jurisdiction to consider his appeal. Petitioner concedes that he did not file a "certification under section 1-109 of the Code of Civil Procedure *** stating the time and place of deposit and the complete address to which the document was to be delivered." See Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017). Under our rules, that is the sole method for proving "time of mailing." *Secura*, 232 Ill. 2d at 215-16.

¶ 30    To accept petitioner's argument would require us to graft onto Rule 12(b)(6) an exception that does not exist. Petitioner relies largely on equity and fairness, suggestive of grounds for a proposed rule amendment, but he does not attempt to argue compliance with the rule. If we enforce our rules only in some cases or adjust them to "fit the exigencies of the moment," we would provide litigants with little incentive to follow our rules. *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 494-95 (2002).

¶ 31    We also decline petitioner's request that we follow federal and out-of-state authority. We recognize that the federal system by rule allows for a postmark to serve as evidence of the date of mailing. See Fed. R. App. Proc. 4(c)(1)(A)(ii) (providing that a notice of appeal is timely if placed in the institutional mail prior to the due date accompanied by "evidence (such as a postmark or date stamp) showing that the notice was so deposited"). However, as petitioner recognizes, our task here is to interpret our rules given their " 'plain and ordinary meaning.' " *People v. Hardman*, 2017 IL 121453, ¶ 19 (quoting *Hall v. Henn*, 208 Ill. 2d 325, 330 (2003)). As laid out above, our rules are clear and unambiguous. Petitioner does not argue otherwise. We have historically declined to resort to sources outside of the plain language of a rule or statute when the language is clear and unambiguous. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 88 (1995). In short, resort to

outside sources such as foreign authority is " 'meant to clean up ambiguity, not create it.' " *Roberts v. Alexandria Transportation, Inc.*, 2021 IL 126249, ¶ 48 (quoting *Milner v. Department of the Navy*, 562 U.S. 562, 574 (2011)). Because our rules are unambiguous, we decline to consider the proposed foreign authority.

¶ 32    We reject the notion that a straightforward application of our rules leads to harsh or absurd results. To the contrary, Rules 373 and 12(b)(6) provide incarcerated *pro se* litigants with a guaranteed method to prove that their notice of appeal was timely placed in the institutional mail. In fact, Rule 373 was amended to remove reliance on postmarks because of "problems with the legibility of post marks" and "delay in affixing them in some cases." Ill. S. Ct. R. 373, Committee Comments (rev. July 1, 1985). In other words, our rules transitioned from an uncertain form of proof reliant on a third party to a certain form of proof reliant only on the litigant.

¶ 33    Further ameliorating any perceived harshness in our rules is a remedy that can be invoked when a notice of appeal is not timely filed. Our rules provide two avenues depending on how much time has elapsed after a notice of appeal's due date. First, Rule 606(c) provides:

> "[O]n motion supported by a showing of reasonable excuse for failing to file a notice of appeal on time filed in the reviewing court within 30 days of the expiration of the time for filing the notice of appeal, *** the reviewing court may grant leave to appeal and order the clerk to transmit the notice of appeal to the trial court for filing." Ill. S. Ct. R. 606(c) (eff. July 1, 2017).

Second, the reviewing court may also grant leave to appeal if, "within six months of the expiration of the time for filing the notice of appeal," an appellant files a motion in the reviewing court "supported by a showing by affidavit that there is merit to the appeal and that the failure to file a notice of appeal on time was not due to appellant's culpable negligence." *Id.*

¶ 34    Unfortunately, neither petitioner nor appointed appellate counsel utilized these safety nets, even though the untimeliness of petitioner's notice of appeal was readily apparent. On December 1, 2020, within the six-month window in Rule 606(c), appointed counsel filed in the appellate court a motion for extension of time to file the record on appeal. The motion clearly set out that the final judgment appealed from was entered on August 3, 2020, and that petitioner's notice of appeal

was filed on September 18, 2020.[1] Petitioner's notice of appeal was due on September 2, 2020. Petitioner's counsel had to have been aware that the notice of appeal was not filed with the clerk within 30 days of the trial court's order denying petitioner leave to file his successive postconviction petition. Also, because the record does not contain a certificate that complies with Rule 12(b)(6), petitioner could not rely on the mailbox rule in Rule 373. Therefore, had appointed counsel acted promptly, a motion could have been filed in the appellate court requesting that the court grant leave to appeal.

¶ 35                                    III. CONCLUSION

¶ 36          An appellate court has jurisdiction in a criminal case only where a notice of appeal is filed within 30 days of the entry of the final judgment appealed from. Ill. S. Ct. R. 606(b) (eff. July 1, 2017). A notice of appeal is considered filed when it is received by the clerk except, as in this case, when a notice of appeal is received by the clerk after the due date. Ill. S. Ct. R. 373 (eff. July 1, 2017). Then, the "time of mailing" is the "time of filing." *Id.* To prove the "time of mailing," an incarcerated *pro se* litigant must submit a "certification under section 1-109 of the Code of Civil Procedure *** stating the time and place of deposit and the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017). Petitioner here failed to file the appropriate certification. His notice of appeal was considered filed when it was received by the circuit court on September 10, 2020, eight days after the due date. The appellate court was correct that it lacked jurisdiction.

¶ 37          Appellate court judgment affirmed.

¶ 38          Appeal dismissed.

---

[1]In the appellate court's decision, the date the notice of appeal was file-stamped is listed as September 18, 2020. The 0 in the 10 on the file stamp is smudged, but the remaining documents filed with the notice of appeal, including the envelope with the postage meter stamp, establish that the notice of appeal was file-stamped by the clerk on September 10, 2020.

¶ 39    JUSTICE O'BRIEN, dissenting:

¶ 40    The undisputed facts of this case are extremely straightforward and can be summarized in three sentences. The incarcerated, self-represented petitioner's notice of appeal was due September 2, 2020. The incarcerated, self-represented petitioner "placed his notice of appeal in the institutional mail on September 1, 2020, a day before it was due." *Supra* ¶ 25. The incarcerated, self-represented petitioner's mailing failed to include a certification, under penalty of perjury, stating when he placed his notice of appeal in the institutional mail.

¶ 41    The legal question presented by these facts is equally straightforward—Does section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2018)) operate to invalidate a timely notice of appeal solely because the proof of mailing lacks specific wording to certify, under penalty of perjury, when and to whom the notice of appeal was mailed? In reviewing these undisputed facts, the majority answers the legal question in the affirmative, concluding that the appellate court lacked jurisdiction to consider petitioner's appeal because petitioner "failed to file the appropriate certification" (*supra* ¶ 36) despite expressly finding that the notice of appeal was placed in the institutional mail "a day before it was due" (*supra* ¶ 25). This conclusion is not mandated by either the Code of Civil Procedure or our supreme court rules and does not comport with this court's commitment to provide access to justice for all people, especially the poor and the vulnerable. Furthermore, even if the majority's assertion that Illinois Supreme Court Rule 373 (eff. July 1, 2017) mandates a certification in order to perfect a notice of appeal, the majority's conclusion is inconsistent with respect to how this court has previously reviewed violations of other supreme court rules. Specifically, the majority's decision applies a type of strict liability standard upon an incarcerated, self-represented litigant's violation, whereas other types of violations, committed by trial judges or attorneys of this state, are excused via harmless-error review or the doctrine of substantial compliance. It is for these reasons, I dissent.

¶ 42    At the outset, I would note that the instant case requests that we examine petitioner's "proof of mailing" even though there is no actual dispute as to when petitioner mailed his notice of appeal. The envelope containing petitioner's notice of appeal bears a legible postage meter stamp with the date of September 1, 2020. The majority thoroughly and convincingly explains the reliability of a postage

meter stamp[2] in proceeding to "accept as fact that petitioner placed his notice of appeal in the institutional mail on September 1, 2020, a day before it was due in the circuit court." *Supra* ¶ 25. The State even concedes that petitioner placed his notice of appeal in the mail prior to the due date. These undisputed facts provide context as to why the majority's draconian and narrow analysis of Rule 373 and Rule 12(b)(6) is incorrect. Ill. S. Ct. Rs. 373, 12(b)(6) (eff. July 1, 2017).

¶ 43    This court has previously explained the reason that "proof of mailing" pursuant to Rule 12 is required in order to take advantage of the "mailbox rule" under Rule 373. "If there is no proof of mailing on file, there is nothing in the record to establish the date the document was timely mailed to confer jurisdiction on the appellate court." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 216 (2009). Here, unlike in *Secura*, we know exactly when the notice of appeal was mailed to the circuit court—September 1, 2020.[3] Thus, the precise question presented under the undisputed facts of the instant case is whether "proof of mailing," as set out in Rule 12(b)(6), is required to be examined where there is no actual dispute as to when petitioner actually mailed his notice of appeal. I would answer this question in the negative.

¶ 44    Rule 373, as originally written, expressly permitted proof of mailing to be "evidenced by a post mark affixed in and by a United States Post Office." See Ill. S. Ct. R. 373 (eff. Jan. 1, 1967). In 1981, this court amended Rule 373 to require proof of mailing by an attorney's certificate or a nonattorney's affidavit. See Ill. S. Ct. R. 373 (eff. Feb. 1, 1981). As the committee comments to Rule 373 state, in part:

> "As originally adopted the rule provided that the time of mailing might be evidenced by the post mark affixed by a United States Post Office. Because of problems with the legibility of post marks, and delay in affixing them in some cases, the rule was amended in 1981 to provide for the use of affidavits of mailing or United States Postal Service certificates of mailing." Ill. S. Ct. R. 373, Committee Comments (rev. July 1, 1985).

---

[2]I agree with the majority's conclusion that "a legible date on a postage meter stamp is of similar evidentiary value as a postmark." *Supra* ¶ 25.

[3]In *Secura*, the only evidence submitted of the date of mailing was a date written on a cover letter.

A later amendment revised the rule "to make the method of proof of mailing consistent with practice under Rule 12." Ill. S. Ct. R. 373, Commentary (rev. Dec. 17, 1993).

¶ 45    Significantly, there is nothing in Rule 373 or the comments or commentary to Rule 373 that affirmatively bars the use of a postmark or postage meter stamp as proof of mailing when the postmark or postage meter stamp's date is legible *and* undisputed by the parties, as is the case here. Moreover, Rule 373 expressly provides: "If received after the due date, *the time of mailing* by an incarcerated, self-represented litigant shall be deemed the time of filing." (Emphasis added.) Ill. S. Ct. R. 373 (eff. July 1, 2017). Here, the undisputed *time of mailing* is September 1, 2020. Did petitioner (who is indigent, incarcerated, and self-represented) certify the *time of mailing* under penalty of perjury—no, he did not. But it is undisputed that he did in fact *mail* his notice of appeal within 30 days of the entry of a final judgment or order, which is the only required jurisdictional step in the perfection of an appeal. See Ill. S. Ct. R. 606(a) (eff. July 1, 2017).

¶ 46    Simply put, I do not believe that this court's amendments to Rule 373 were intended to require courts to ignore reality—a legible and undisputed date, processed and affixed by the United States Postal Service, on a document that was mailed by an incarcerated, self-represented litigant. See *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 35 (holding, "when a plain or literal reading of the statute leads to absurd results or results that the legislature could not have intended, courts are not bound to that construction, and the literal reading should yield" (citing *People v. Hanna*, 207 Ill. 2d 486, 498 (2003)). [4] Instead, the amendments to Rule 373 were expressly intended to address a scenario that the instant case does not present us with—problems of illegible postmarks/postage meter stamps and late-placed postmarks/postage meter stamps. The appellate court in *People v. Hansen*, 2011 IL App (2d) 081226, ¶ 14, succinctly and correctly explained:

" '[B]efore a postmark [is] stamped on an envelope, the envelope must be placed in the mail. If the postmark is timely, then it is immaterial when the

---

[4]Our rules are to be interpreted in the same manner as statutes. *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010).

envelope was actually placed in the mail.' [Citation.] It is axiomatic that, if there is a timely and legible postmark, an affidavit or a certification of mailing is a corroborative redundancy. Requiring a court to overlook a clearly legible postmark showing that a document was processed by a disinterested third party, such as the post office, on or before the date by which the document was required to be mailed is to disregard the best, most competent evidence of the latest date of mailing consistent with the 'pro-mailing policy of Rule 373.' [Citation.]"

¶ 47   Likewise, I do not believe that this court's amendments to Rule 373 were intended to make it more difficult for incarcerated, self-represented litigants to exercise their fundamental constitutional right to appeal a criminal conviction. See Ill. Const. 1970, art. VI, § 6; *People v. Abdullah*, 2019 IL 123492, ¶ 19 (holding "[c]riminal defendants in Illinois have a fundamental right to appeal their convictions and sentences after a final judgment"). Yet, that is the plain and broad effect of the majority's decision today requiring "proof of mailing" to be strictly examined where there is no actual dispute as to when petitioner actually mailed his notice of appeal. Stated another way, the majority's decision is in direct contradiction with this court's mandate to provide access to justice for all people, especially the poor and the vulnerable. Although the majority rejects the notion that its decision will lead to harsh or absurd results, the facts of this case demonstrate otherwise.

¶ 48   Here, it is undisputed that petitioner placed his notice of appeal in the institutional mail "a day before it was due." *Supra* ¶ 25. It also is important to note that petitioner attempted to comply with our rules when doing so. Included with petitioner's notice of appeal was a "Notice of Mailing/Filing" (Notice), which stated the date he was depositing the mail in the "mail drop box of Graham Correctional Center mail drop box." The Notice was signed by petitioner. The Notice also identified and listed the parties who were being served with the notice of appeal. The office of the state's attorney and the appropriate circuit clerk's office were two of the parties listed on the Notice, with respective addresses for each. However, the Notice failed to include a certification, under penalty of perjury, that the above information was true and correct. And it is solely upon this last sentence that the majority's entire decision rests. Simply put, I can find no better example of a harsh and absurd result given the undisputed facts of this case.

¶ 49     The majority contends, however, that its decision does not make it more difficult for incarcerated, self-represented litigants to exercise their fundamental right to an appeal. Citing Rules 373 and 12(b)(6), the majority notes that incarcerated, self-represented litigants now have "a guaranteed method to prove that their notice of appeal was timely placed in the institutional mail." *Supra* ¶ 32. I do not disagree with the general premise that litigants can now guarantee timeliness via certification. What happens, however, in scenarios such as the instant case where an incarcerated, self-represented litigant fails to strictly comply with the certification requirement but (1) he places his notice of appeal in the institutional mail within 30 days of the entry of a final judgment or order, (2) he includes a "Notice of Mailing/Filing" that is signed and contains all relevant *factual* information, (3) there is a legible postage meter stamp verifying the date of mailing, and (4) the parties do not dispute this date? The majority's conclusory reliance upon the general premise that litigants can now guarantee timeliness via certification ignores this reality and also misses this straightforward point—this decision will result in fewer incarcerated, self-represented appeals due to the fact that the majority has now authorized dismissal on the basis of a litigant's failure to strictly comply with certification, even in cases where it is undisputed that the litigant timely mailed his notice of appeal. The majority cannot escape this fact. In other words, incarcerated, self-represented litigants no longer must simply mail their notice of appeal within 30 days of the entry of a final judgment or order. They now must mail their notice of appeal within 30 days of the entry of a final judgment or order *and* they must strictly comply with all certification requirements. The majority's decision shifts Illinois away from a *per se* "mailbox rule" model and instead moves it to a "mailbox rule + strict certification" model. Simply put, this decision does not serve the interests of access to justice. The notion that the majority's decision broadly makes things easier for incarcerated, self-represented litigants to exercise their fundamental right to appeal is not true, as was demonstrated by the experience of the incarcerated, self-represented litigant in the instant case.

¶ 50     Further, the majority takes petitioner and his counsel to task for failing to file a motion for leave to file a late notice of appeal. *Supra* ¶ 34. This reasoning prompts the question—why would an incarcerated, self-represented litigant file a motion for leave to file late notice of appeal when he believes his original notice of appeal was timely filed? Furthermore, the majority's reasoning ignores the well-settled

principle that petitioner could not file a *pro se* motion for leave to file a late notice of appeal once counsel was appointed to represent him (counsel was appointed on September 18, 2020). "[A] defendant possesses 'no right to some sort of hybrid representation, whereby he would receive the services of counsel and still be permitted to file *pro se* motions.' " *People v. James*, 362 Ill. App. 3d 1202, 1205 (2006) (quoting *People v. Handy*, 278 Ill. App. 3d 829, 836 (1996)); see also *People v. Stevenson*, 2011 IL App (1st) 093413, ¶ 30. I offer no comment about the effectiveness of counsel's conduct, as that matter is not before this court.

¶ 51       As the highest court of this state, we continuously and rightfully promote equal access to justice for all litigants across Illinois. Our actions, however, must match our words. The majority's decision fails to recognize the limitations that are particular to incarcerated, self-represented litigants. The situation of prisoners seeking to appeal without the aid of counsel is unique. First, and foremost, such litigants lack freedom of movement. They cannot simply walk to the circuit court or google "how do I appeal my case." They often lack access to legal authority, materials, and forms due to lockdowns or restrictions on law library time. They are also subject to a prison mail system that labors with severe delays. Unskilled in law, unaided by counsel, and unable to leave the prison, they are left to their own devices to navigate a complex system consisting of hundreds of rules and ever-evolving case law. The system is so complex that we require seven years of postsecondary education and the subsequent passing of a two-day exam in order to stand before a court on another's behalf. Even then, it often takes attorneys several years of seasoning before they find themselves sitting "first-chair" during a trial. Petitioner overcame all these obstacles but for certifying, under penalty of perjury, that the information contained in his Notice was true and correct. To ignore the reality of these facts, along with (1) the fact that petitioner placed his notice of appeal in the institutional mail a day before it was due, (2) the steps he took (*supra* ¶¶ 7-8) to attempt to comply with the intricacies of our rules, and (3) the legible postage meter stamp that objectively and undisputedly establishes *the date of mailing*, is an unjust interpretation of our rules and hampers our commitment to ensuring that all litigants in Illinois, including the poor and vulnerable, have equitable access to justice.

¶ 52       Finally, with these facts in mind, I would like to express my concern that the majority's decision creates an inconsistent standard when examining violations of our supreme court rules. Specifically, the majority's decision in the instant case

- 17 -

applies a type of strict liability standard upon an incarcerated, self-represented litigant's violation, whereas other types of violations, committed by trial judges or attorneys practicing in this state, are often excused via harmless-error review or the doctrine of substantial compliance. For example, this court in *People v. Glasper*, 234 Ill. 2d 173, 201 (2009), reviewed whether a trial court's failure to comply with Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 1997)), as it existed at that time, required a court to presume prejudice and automatically reverse the defendant's conviction, or whether the error was subject to harmless-error review. Notably, Rule 431(b) at the time provided that the trial court " 'shall ask' " each potential juror if he or she understands certain bedrock principles of our judicial system. *Glasper*, 234 Ill. 2d at 187 (quoting Ill. S. Ct. R. 431(b) (eff. May 1, 1997)). In determining that the court's failure to ask such questions was subject to harmless-error review, we expressly held that "[t]he violation of a supreme court rule does not mandate reversal in every case." *Id.* at 193.

¶ 53    Likewise, in *People v. Houston*, 226 Ill. 2d 135, 147, 152 (2007) (quoting Ill. S. Ct. R. 608(a)(9) (eff. Dec. 13, 2005)), we found that defense counsel's violation of a supreme court rule providing that a court reporter " 'shall take the record of the proceedings' " does not constitute *per se* ineffective assistance of counsel. (Emphasis omitted.) In *People v. Daniels*, 172 Ill. 2d 154, 163, 165 (1996) (quoting Ill. S. Ct. R. 434(d) (eff. May 1, 1995)), we held that a trial court's violation of a supreme court rule providing that defendant " 'shall be allowed' " a certain number of peremptory challenges did not require *per se* reversal of a conviction. Later, in *People v. Rivera*, 227 Ill. 2d 1, 26-27 (2007), we determined that harmless-error review was appropriate where the defendant alleged that his sixth amendment right to a fair trial (U.S. Const., amend. VI) was violated when he was denied one of the seven peremptory challenges afforded to him pursuant to supreme court rule. In *People v. Pasch*, 152 Ill. 2d 133, 193 (1992), we found that the State's violation of a supreme court rule involving discovery was harmless and did not require automatic reversal of the defendant's conviction. In *People v. Johnson*, 119 Ill. 2d 119, 132 (1987), we held that a trial court's failure to provide the defendant with one particular admonishment prior to waiving counsel was not fatal to the defendant's waiver of counsel because the trial court "substantially complied with the [r]ule."

¶ 54　　　　Similarly, we have applied the same type of reasoning and analysis to statutory violations committed by trial courts. In *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009), we found that a trial court's failure to admonish the defendant of potential immigration consequences prior to entry of his guilty plea, despite an Illinois statute providing that the trial court "shall give" said admonishments, did not automatically require a court to allow the defendant's motion to withdraw his guilty plea. In *In re M.I.*, 2013 IL 113776, ¶¶ 14, 21 (quoting 705 ILCS 405/5-810(2) (West 2008)), we found that a trial court's failure to hold a hearing within 60 days of the filing of a motion for a proceeding to be designated as an extended juvenile jurisdiction prior to commencement of trial, despite an Illinois statute providing that " 'the hearing shall be held within 60 days of the filing of the motion' " did not void the defendant's subsequent adult sentence.

¶ 55　　　　In none of the above cases did this court apply a strict liability standard to rule violations committed by trial judges or practicing attorneys. Yet here, the majority has chosen to require strict, technical compliance with Rules 373 and 12(b)(6) regardless of the fact that petitioner is an incarcerated, self-represented litigant who not only undisputedly mailed his notice of appeal before the due date but also attempted to comply with the intricacies of our rules. Again, petitioner included all relevant information in the Notice, including the date he was depositing the notice of appeal in the institutional mail. He merely failed to certify, under penalty of perjury, that the information in the Notice was true and correct. At best, petitioner complied with our rules, as *the time of mailing* is not in dispute. At worst, petitioner substantially complied with our rules.

¶ 56　　　　Accordingly, a plain and logical reading of our rules requires that petitioner's appeal be heard on the merits. Furthermore, our continued commitment to ensuring fair and equitable access to justice demands it.