2024 IL App (1st) 201016-UB

FIRST DIVISION
October 28, 2024

No. 1-20-1016

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>　　　Respondent-Appellee,<br><br>v.<br><br>JOHNNY ENGLISH,<br><br>　　　Petitioner-Appellant. | Appeal from the<br>Circuit Court of<br>Cook County.<br><br>No. 95 CR 11734<br><br>Honorable<br>Timothy Joseph Joyce,<br>Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**O R D E R**

¶ 1　*Held*: We affirm the circuit court's denial of the petitioner's *pro se* motion for leave to file his second successive postconviction petition. The petitioner's attempt to challenge the sentencing scheme under which he was found death penalty eligible but ultimately sentenced to 70 years' imprisonment was not raised in the pleading he filed before the circuit court.

¶ 2　After a bench trial in the circuit court of Cook County in 1997, the then-18-year-old petitioner, Johnny English, was convicted of, *inter alia*, first degree murder and sentenced to 70

years' imprisonment. After unsuccessfully litigating his direct appeal and two separate postconviction petitions, the *pro se* petitioner sought leave to file his second successive postconviction petition (725 ILCS 5/122-1(f) (West 2018)). The circuit court denied the petitioner's request and the petitioner appealed to this court. We dismissed the appeal for lack of jurisdiction, finding that the petitioner's notice of appeal was untimely. Our supreme court subsequently issued a supervisory order directing us to vacate that dismissal and to consider the petitioner's appeal. We vacated our dismissal order, reinstated the appeal, and permitted the petitioner to file a new appellate brief. On appeal, the petitioner now contends that the circuit court erred in denying his *pro se* motion for leave to file his second successive postconviction petition because he sufficiently established cause and prejudice with respect to his claim that the 1997 sentencing scheme under which he was found death penalty eligible but ultimately sentenced to 70 years' imprisonment for a crime he committed when he was only 18 years old was unconstitutional under the Illinois proportionate penalties clause (Ill. Const. 1970, art I, § 11). For the following reasons, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4     Because the record before us is voluminous and the facts of the offense are fully set out in our order affirming the petitioner's conviction and sentence on direct appeal (*People v. English*, No. 97-2365 (unpublished order pursuant to Illinois Supreme Court Rule 23) (Feb. 19, 1999) (*English I*)), we set forth only those facts and procedural history relevant to the resolution of the issues here.

¶ 5     In 1995, together with codefendant James Davis, the 18-year-old petitioner was charged with, *inter alia*, armed robbery, first degree murder and attempted first degree murder for his

involvement in the death of Frank Klepacki and the shooting of Casey Klepacki.

¶ 6     Prior to trial, the petitioner filed a motion to suppress his inculpatory statement to the police claiming that it was involuntary because he did not understand his *Miranda* warnings and could not read, such that he did not know what the statement he signed said. In support of his motion, at the subsequent hearing, the petitioner called his mother, Helen English, who testified, *inter alia*, that the petitioner had a learning disability, never finished high school, and could not read. The circuit court denied the petitioner's motion and rejected the petitioner's claim that he was not intelligent enough to voluntarily waive his *Miranda* warnings, noting that the petitioner failed to introduce any medical evidence or diagnosis to support his position of mental deficiency.

¶ 7     In 1997, the petitioner proceeded with a bench trial[1] at which the following relevant evidence was adduced. At approximately 9:30 p.m. on March 19, 1995, the petitioner and codefendant Davis were selling drugs outside of a house on the west side of Chicago. Codefendant Davis approached the petitioner, informing him that he had just sold drugs inside the house to "two white dudes" who would be "sweet victims" because they had a lot of money and would be easy to rob. The petitioner and codefendant Davis then determined that they would rob the two victims, Casey and Frank, by stationing themselves outside of a gangway on either side of the exit. When Casey and Frank exited the building, Casey waved at the petitioner, whom he knew from prior encounters.

¶ 8     The petitioner and codefendant Davis then drew their guns, beat the victims about their heads with the guns, and pulled them towards a porch at the back of the building. The petitioner pulled Frank up onto the porch, forcing him to lie down. Meanwhile, codefendant Davis put his gun to Casey's head, ripped a necklace from Casey's neck and forced him to remove his shoes and

---

[1] The petitioner's bench trial was held concurrently with codefendant Davis's severed jury trial.

socks to look for money. When codefendant Davis found none, the petitioner told Casey to remove his pants. Casey complied, after which he said, "If you're going to kill us, why don't *** you just do it?" The petitioner apparently tried to shoot Frank, but the gun misfired. Casey stated that after he heard the shot, he saw the petitioner holding Frank in a headlock with a smoking gun in his hand.

¶ 9     The petitioner next pointed the gun at Casey while codefendant Davis patted him down. Afterwards, the petitioner shot Casey in the back. Casey ran but fell and pretended to be dead while codefendant Davis, still holding his gun, approached to check on him. After the codefendant left, Casey fled. As he did so, he heard two more gunshots.

¶ 10    Evidence at trial further established that Frank's body was discovered in the gangway with a trail of blood leading from the porch. The autopsy revealed that he was shot at close range and in the chest.

¶ 11    In his statement to the police, the petitioner admitted to the robbery but claimed that codefendant Davis was the shooter.

¶ 12    William Wilson, who had two prior convictions for unlawful use of a weapon and one for possession of a controlled substance with intent to deliver, also testified at the petitioner's trial. He stated that on the day of the incident, he heard gunshots and saw the petitioner run past him. Wilson followed the petitioner and watched as the petitioner attempted to unjam a handgun. When Wilson eventually caught up with the petitioner, the petitioner told him that he and codefendant Davis had tried to rob two men and that he had killed one and shot the other.

¶ 13    The petitioner was found guilty of first-degree murder, attempted first degree murder and armed robbery.

¶ 14    The State sought the death penalty and provided the circuit court with the petitioner's birth

certificate to prove that he was 18 years old and therefore death eligible. (720 ILCS 5/9-1(b) (West 1996)). The circuit court found the petitioner eligible for the death penalty because he was 18 years old, had committed the crime during an armed robbery, and was the one who shot Frank. 720 ILCS 5/9-1(b)(6)(a)(i), (b), (c) (West 1996)). A hearing was then held to determine whether the petitioner should receive the death penalty.

¶ 15     At that hearing, the State urged the court to impose the death penalty, or in the alternative sentence the petitioner to: (1) natural life in prison (720 ILCS 5/5-8-1(a)(1)(b) (West 1996)); or (2) an extended term sentence of 60 to 100 years because the crime was accompanied by "brutal or heinous" behavior indicative of wanton cruelty (720 ILCS 5/5-8-2(a)(1), 5-5.3.2(b)(2) (West 1996)).

¶ 16     In support, the State argued that the petitioner lacked rehabilitative potential because of his actions while in custody of the Cook County Department of Corrections pretrial. The State offered evidence from several Cook County jail guards. The first guard testified that while the petitioner was awaiting trial, he and another inmate beat a third inmate who had allegedly sexually assaulted them. A second guard testified that on another occasion, the petitioner refused to leave a visiting area when told his time had expired. When the guards attempted to forcibly remove him, the petitioner struck two of them in the face. To counter this testimony, the petitioner presented the testimony of the woman who was visiting him that day and who asserted that a guard had struck the petitioner first and that the petitioner had only struck him back in self-defense. The State also introduced evidence that on a third occasion the petitioner had asked a prison guard to get a nurse for another inmate who was sick, but then refused to follow the guard's order to go into another part of the jail until the nurse arrived, swearing and threatening the guard. In addition, the State submitted several victims' impact statements, as well as evidence that prior to the instant crime,

the petitioner had a 1994 conviction for possession of marijuana.

¶ 17    In response, defense counsel argued that the circuit court should spare the petitioner's life and instead "incapacitate" him by imposing a sentence "within the normal confines of the sentencing range" which defense counsel believed was a sentence of "up to 90 years and possibly more." Defense counsel also argued that the court should not impose the death penalty because the petitioner had "no significant criminal history," was "seventeen, eighteen years old," and was likely induced into committing the crime by his much older codefendant (who was 30 years old). At no time did defense counsel argue that the petitioner had the rehabilitative potential to be released from prison in the future. Instead, all of defense counsel's arguments focused on the petitioner having "learn[ed] how to live in custody," without being "a threat to anybody in jail."

¶ 18    In support of these arguments, defense counsel called the petitioner's mother, who testified that the petitioner had a learning disability and dropped out of high school because he was teased by other students and because he could not deal with his father's death from cancer. Through stipulated testimony, defense counsel also introduced the opinion of a clinical psychologist that the petitioner's I.Q. was around 70, which was "borderline intellectual functioning." The psychologist further opined that the petitioner had a learning disability, dyslexia, "very poor" reading ability, and was immature and hyperactive.

¶ 19    After hearing all the evidence, the circuit court elected not to impose the death penalty. Instead, the court found that the crimes were "brutal and heinous" and imposed an extended term sentence of 70 years' imprisonment for first-degree murder, to be served concurrently with a 30-year sentence for attempt first-degree murder and another 30-year sentence for armed robbery. The court also indicated that the petitioner's sentence was to be served at 50%.

¶ 20    The petitioner appealed, contending that the circuit court's finding that the crimes were

"brutal and heinous" was improper and that the sentences were excessive. We rejected the petitioner's arguments and affirmed his conviction and sentence on direct appeal. See *English I*, No. 97-2365 (unpublished order pursuant to Illinois Supreme Court Rule 23) (Feb. 19, 1999).

¶ 21     On December 10, 1999, the petitioner filed a *pro se* postconviction petition alleging, *inter alia*, that his trial counsel was ineffective for failing to investigate two alibi witnesses and that appellate counsel was ineffective for failing to raise this issue on direct appeal. After the State filed a motion to dismiss, postconviction counsel supplemented the petitioner's *pro se* petition with an additional claim, namely that his sentence was improper under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The circuit court dismissed the petition, and this court subsequently affirmed that dismissal. See *People v. English*, No. 1-02-0280 (unpublished order pursuant to Illinois Supreme Court Rule 23) (March 19, 2004) (*English II*).

¶ 22     On February 16, 2005, the petitioner filed his first successive postconviction petition, alleging, *inter alia*, that his trial counsel was ineffective for failing to: (1) advance an alibi defense; and (2) call two witnesses who would have challenged the testimony of Wilson and shown that he had perjured himself. In support, the petitioner attached affidavits from Farris Skinner and Charles Streeter, who alleged his innocence and explained that on the night of the murder the petitioner was with them at his mother's house. The petitioner further attached his own affidavit and affidavits from his sister Charlotte English and Tomaine Davis attesting that Wilson had told them that the prosecutor had forced him to lie at the petitioner's trial.

¶ 23     The State filed a motion to dismiss, but the circuit court found that the two claims should be advanced to an evidentiary hearing. The hearing was held on March 18, 2008, after which the circuit court dismissed the petition, finding that the petitioner's allegations were "not supported by credible evidence."

¶ 24    On July 10, 2020, the petitioner filed the instant motion for leave to file his second successive postconviction petition.[2] Therein, citing to *Montgomery v. Louisiana*, 577 U.S. 190 (2016), *Miller v. Alabama,* 567 U.S. 460 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), *People v. House*, 2019 IL App. (1st) 110580-B, and *People v. Buffer*, 2019 IL 122327, the petitioner argued that he was entitled to a new sentencing hearing based on the recent changes in the law regarding the sentencing of juvenile offenders and emerging adults. The petitioner asserted that because it was greater than 40 years, his 70-year extended term sentence was a *de facto* life sentence under *Buffer*, 2019 IL 122327, and violated both the eighth amendment (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art I, § 11). The petitioner explained that although his sentence was to be served at 50%, this was not a guarantee because the prison environment was "harsh" and good-day credit could be taken away for breaking institutional rules. The petitioner further argued that in imposing this *de facto* life sentence, the circuit court failed to consider the following relevant characteristics that now must be considered before sentencing a juvenile to life imprisonment: peer pressure, family environment, impetuosity, the failure to appreciate risks and consequences, incompetence in dealing with police officers and prosecutors and the incapacity to assist in his own defense. The petitioner further asserted that in imposing a just sentence as applied to him, the court should have considered: his low IQ, his learning disability, the influence of his 30-year-old codefendant, and the fact that he committed the crime just two months after his 18th birthday. The petitioner further pointed out that he came from a poor upbringing, that his father died of cancer when he was young, and that he had a minor criminal background.

---

[2] While the pleading itself was titled "*Pro Se* Successive Postconviction Petition," it specifically requested "leave of the Court to file" the successive petition and claimed that it satisfied the "cause and prejudice" test. Because the circuit court subsequently treated the pleading as a motion for leave to file a successive postconviction petition, we will continue to do the same.

¶ 25    In support of his petition, the petitioner attached affidavits from himself and from a law clerk in the Illinois Department of Corrections (IDOC), who attested to having helped the petitioner prepare the filing because of his limited educational background and abilities.

¶ 26    On August 3, 2020, the circuit court denied the petitioner's *pro se* motion for leave to file his successive petition. In its written order, the circuit court explained that the petitioner had failed to meet the cause and prejudice test. The court found that the petitioner's sentence did not violate the eighth amendment (U.S. Const., amend. VIII) because he was 18 years old at the time of the offense and the protections outlined in *Miller* extend only to juvenile offenders. The court further found that the petitioner's sentence did not shock the moral sense of our community under the proportionate penalties clause (Ill. Const. 1970, art I, § 11) because the petitioner was an active participant in the crime and was not coerced or encouraged by any other individual, notwithstanding his intellectual disability.

¶ 27    The petitioner appealed to this court asserting that he sufficiently stated cause and prejudice with respect to his claim that his 70-year sentence was unconstitutional as applied to him under the Illinois proportionate penalties clause (Ill. Const. 1970, art I § 11) because it was improperly imposed without any consideration of his age and youthful characteristics, which would now shock the moral sense of our community.[3]

¶ 28    On November 23, 2021, we dismissed the petitioner's appeal for lack of jurisdiction, finding that the petitioner failed to timely file his notice of appeal. *People v. English*, 2021 IL App (1st) 101016-U, ¶ 26 (*English III*). The petitioner appealed to our supreme court, which initially

---

[3] Initially, the petitioner also challenged his sentence under the eight amendment (U.S. Const., amend VIII). However, in his reply brief, he subsequently conceded that pursuant to our supreme court's decision in *People v. Dorsey*, 2021 IL 123010, ¶¶ 50-65, which was published after he filed his original brief, his eligibility for day-for-day good conduct credit and the possibility that he would serve only a 35-year sentence negated any argument that his sentence was an unconstitutional *de facto* life sentence.

affirmed the dismissal, but then upon rehearing found that the due date for the petitioner's notice of appeal had been "extended from 30 days to 60 days" due to the COVID-19 pandemic. See *People v. English*, 2023 IL 128077, ¶¶ 36-38 (citing Ill. S. Ct. M.R. 30370 (eff. Mar. 24, 2020)). Our supreme court therefore found that the petitioner's notice of appeal was timely and that we had jurisdiction to consider it. *Id*. On November 27, 2023, our supreme court entered a supervisory order directing us to vacate the judgment dismissing the petitioner's appeal and to reinstate it. *Id*. After we entered such an order on January 2, 2024, the petitioner was granted leave to withdraw his original brief and to file a new one.

¶ 29                                III. ANALYSIS

¶ 30     In his new brief, the petitioner now reiterates that he sufficiently stated cause and prejudice for his failure to raise an as-applied challenge to his sentence under the Illinois proportionate penalties clause (Ill. Const. 1970, art I, § 11). This time, however, the petitioner changes course and asserts that the "sentencing scheme" under which he was sentenced to 70 years' imprisonment shocks the moral sense of our community because it focused on whether he should receive the death penalty, which has since been abolished in this state.

¶ 31     Under that sentencing scheme, once the circuit court determined that the petitioner was death penalty eligible (720 ILCS 5/9-1(b)-(h) (West 1996)), in the presence of certain "mitigating factors" (720 ILCS 5/9-1(c), (h) (1997)), the circuit court could nonetheless elect not to execute the petitioner and instead order: (1) a sentence of natural life imprisonment (730 ILCS 5/5-8-1(a)(1)(b) (West 1996)); or (2) an extended term sentence of 60 to 100 years in prison, if certain aggravating factors applied (730 ILCS 5/5-8-2(a)(1) (1997) (providing that if an aggravating factor set forth in paragraph (b) of Section 5-5-3.2 was present, the court could order a term of 60 to 100 years); 730 ILCS 5/5-5-3.2(b)(2) (1997) (listing the aggravating factors justifying an extended term sentence,

including that an offense was "accompanied by exceptionally brutal of heinous behavior indicative of wanton cruelty"). If no aggravating factors existed justifying the imposition of an extended-term sentence, the circuit court could sentence the petitioner under the standard sentencing range for first degree murder to anywhere between 20 to 60 years' imprisonment (730 ILCS 5/5-8-1(a)(1)(a) (West 1996)).

¶ 32    The petitioner asserts that because in the present case, under this sentencing scheme, the State urged that he be executed and the court found him eligible for the death penalty, even though he had just turned 18 years old, in order to spare his life, defense counsel was forced to argue that the circuit court should impose a lengthy sentence that "incapacitated" him instead of one that took into account his youth and its attendant characteristics and his overall rehabilitative potential for future release. Compare 720 ILCS 5/9-1(b)(j) (West 1996) (providing the sentencing scheme for the death penalty) with *People v. Estrada*, 2024 IL App (1st) 230029-U (explaining how counsel must now challenge a lengthy sentence for young adults). He therefore argues that the sentencing scheme was unconstitutional as applied to him under the proportionate penalties clause.

¶ 33    At the outset, we note that the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2018)) provides a means by which criminal defendants may address substantial violations of their constitutional rights at trial or at sentencing. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act is not a substitute for an appeal, but rather, is a collateral attack on a final judgment. *Edwards*, 2012 IL 111711, ¶ 21. Accordingly, issues not presented in an original or amended petition will be deemed waived, and issues that have previously been raised and addressed on appeal will be barred pursuant to the doctrine of *res judicata*. See *Edwards*, 2012 IL 111711, ¶ 21; see also *People v. Sanders*, 2016 IL 118123, ¶ 24 (citing 725 ILCS 5/122-3 (West 2014)).

¶ 34    Consistent with these principles, the Act contemplates the filing of only one petition

without leave of court. See *People v. Lusby*, 2020 IL 124046, ¶ 27; *Edwards*, 2012 IL 111711, ¶ 23; see also 725 ILCS 5/122-1(f) (West 2018). To obtain leave of court, the petitioner must demonstrate cause for his failure to raise the claim in the initial petition and prejudice from that failure. *Id*. To show cause the petitioner must identify an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings. *Id*.; see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 462 (2002). To show prejudice the petitioner must demonstrate that the claim not raised during his initial postconviction proceedings so infected the resulting conviction or sentence that it violated due process. *Id*. It is the petitioner's burden to make a *prima facie* showing of cause and prejudice before any further proceedings on his claim can occur. *People v. Bailey*, 2017 IL 121450, ¶ 24; *People v. Smith*, 2014 IL 115946, ¶ 30. Failure to state either cause or prejudice will be detrimental to a motion seeking leave to file a successive petition. *Id*.

¶ 35     Accordingly, a motion for leave of court to file a successive petition will be denied "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35. Our review of the circuit court's denial of a motion for leave to file a successive postconviction petition is *de novo*. See *Bailey*, 2017 IL 121450, ¶ 13.

¶ 36     In the present case, the petitioner asserts that he made a *prima facie* showing of both cause and prejudice regarding his as-applied proportionate penalties challenge to the sentencing scheme under which he was found death penalty eligible but ultimately sentenced to 70 years' imprisonment. The petitioner asserts that because it was not until 2011 that Illinois abolished the death penalty (725 ILCS 5/119-1(a)(West 2011), and not until 2015 that in *People v. Thompson*,

2015 IL 118151, our supreme court directed young adult offenders to argue as-applied proportionate penalties challenges through postconviction proceedings, at the time he filed his original postconviction petition in 1999, the law did not support his claim. He similarly maintains that the evolving scientific research indicating that brain development does not stop at 18 and that therefore some young adults should be treated as juveniles was unavailable until at least 2015. Accordingly, the petitioner asserts that he has made a *prima facie* showing of an objective factor that impeded him from raising the instant claim in his original postconviction petition.

¶ 37    The petitioner also argues that he made a *prima facie* showing of prejudice because under the sentencing scheme in place in 1997, the circuit court's finding that he was eligible for the death penalty permeated his entire sentencing proceedings, such that no arguments that he was akin to and should be treated like a juvenile were ever made.

¶ 38    Before addressing the merits of the petitioner's position, we first address the State's argument that because the petitioner never raised the instant claim in his *pro se* motion for leave to file his successive postconviction petition, he cannot raise it here for the first time on appeal.

¶ 39    It is well-settled that "postconviction petitioners may not raise claims on appeal that were not included in their motions for leave to file or in their proposed successive petitions." *People v. Montanez*, 2023 IL 128740, ¶ 88; see also *e.g.*, *People v. Petrenko*, 237 Ill. 2d 490, 502 (2010) (holding that "any issues to be reviewed must be presented *in the petition* filed in the circuit court, and [that] a defendant may not raise an issue for the first time while the matter is on review" (emphasis in original)); *People v. Cathey*, 2012 IL 111746, ¶ 21 (same). Our supreme court has repeatedly held that " '[t]he question raised in an appeal from an order dismissing a postconviction petition is whether the allegations *in the petition*, liberally construed and taken as true are sufficient

to invoke relief under the Act.' " (emphasis in original) *Montanez*, 2023 IL 128740, ¶ 89 (quoting *People v. Jones*, 211 Ill. 2d 140, 148 (2004)). While a *pro se* petition must be given liberal construction and viewed with a lenient eye, allowing borderline cases to proceed," despite this low threshold, the petition must nonetheless " 'clearly set forth' the respects in which the petitioner's constitutional rights were violated." *People v. Mars*, 2012 IL App (2d) 110695, ¶ 32 (quoting *People v. Hodges*, 234 Ill. 2d 1, 9 (2009)). Accordingly, any issues to be reviewed on appeal must be presented in the petition filed in the circuit court, and the petitioner may not raise a new issue for the first time on appeal. *Montanez*, 2023 IL 128740, ¶ 89.

¶ 40    Our supreme court has further held that "[t]his basic principle is especially true on appeal from the denial of leave to file a successive postconviction petition," such as the instant one, "where the standard for filing is higher than the standard for filing an initial postconviction petition." *Id*. ¶ 90; see also *Smith*, 2014 IL 115946, ¶ 35 (the cause and prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act)).

¶ 41    Applying these principles to the present case, after a thorough review of the record, we find that no matter how liberally we construe the petitioner's *pro se* motion for leave to file his successive postconviction petition, his pleading does not contain the death penalty argument he now presents on appeal. The petitioner's *pro se* pleading nowhere mentions the petitioner's eligibility for the death penalty and/or its effect on the fairness of his sentence or sentencing hearing. In fact, the words "death penalty" do not even appear in his motion. Similarly, the original pleading nowhere challenges the "sentencing scheme" under which the petitioner was sentenced. Instead, the pleading challenges the length of his extended term *sentence*, arguing that it shocks the moral sense of our community because it was imposed without any consideration of the

petitioner's youth and its attendant characteristics as is required under *Miller* and its progeny.

¶ 42     The circuit court denied the petitioner's motion for leave to file his successive postconviction petition on this ground, holding that the petitioner failed to establish prejudice because his 70-year *sentence* did not shock the moral sense of our community under the proportionate penalties clause since he was an active participant in the crime, notwithstanding his young age, circumstances, and intellectual disability. In his original brief before this court, the petitioner himself acknowledged that this was the basis for the denial of his request for leave to file his successive petition, when he challenged that finding. While we permitted the petitioner to withdraw that brief and file a new one, the argument he now raises must nonetheless at least resemble the claims he presented in his initial *pro se* pleading. See *e.g.*, *Mars*, 2012 IL App (2d) 10695, ¶ 32 ("the pleading must bear some relationship to the issues raised on appeal" because "liberal construction does not mean that we distort reality."). Because the petitioner now attempts to challenge the death penalty sentencing scheme under which he was sentenced, which is an argument he never raised below, and the circuit court therefore did not address, we find that his claim is not properly before us. See *Montanez*, 2023 IL 128740, ¶¶ 91-100 (holding that where the petitioner's *pro se* motion for leave to file a successive postconviction petition asserted a *Brady* claim based on the State's failure to disclose a specific police report prepared in the petitioner's case but did not assert a *Brady* violation based on the State's failure to disclose the entirety of the police department file, the petitioner could not raise the latter claim for the first time on appellate review). Accordingly, we must affirm the circuit court's denial of the petitioner's request for leave to file his second successive petition.

¶ 43     In doing so, we note that if the petitioner believes that the death penalty sentencing scheme violates the proportionate penalties clause as applied to him for the reasons he attempts to articulate

15

here, he is welcome to seek leave to file a new successive petition in the circuit court, raising this argument.

¶ 44                                     III. CONCLUSION

¶ 45     For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 46     Affirmed.