2024 IL App (1st) 220124-U

No. 1-22-0124

Order filed March 22, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 2207 |
| | ) | |
| BRANDON WADE, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's sentence is affirmed where it is not excessive, and the trial court properly considered the inherent factor of psychological harm to the victim in aggravation.

¶ 2    Following a jury trial, defendant Brandon Wade was convicted of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1)(i) (West 2018)) and sentenced to concurrent terms of 18 and 5 years in prison, respectively. On appeal, Mr. Wade argues that his 18-year sentence for predatory criminal

sexual assault of a child is excessive given the nature of the offense, his lack of criminal background, and his rehabilitative potential. He also contends the trial court improperly considered psychological harm to the victim as an aggravating factor at sentencing. For the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4     Mr. Wade was charged with two counts of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse of a child. The charges arose from events that occurred in September and October of 2018. At the time, Mr. Wade was 20 years old and the minor victim, his stepbrother L.W., was 9 years old. Mr. Wade has cerebral palsy and uses a wheelchair. The incidents occurred at his residence, where he lived with his mother and stepfather, who was L.W.'s father, and where L.W. visited on weekends.

¶ 5     At trial, L.W. testified that between September 1, 2018, and October 6, 2018, Mr. Wade made contact between his penis and L.W.'s buttocks about five times. L.W. did not recall the exact dates other than the last time. Each incident followed the same general pattern. Mr. Wade and L.W. would be in Mr. Wade's room with the door closed, playing the video game Fortnite, using Mr. Wade's Xbox account. L.W. would ask him to purchase V-Bucks, an in-game currency. Mr. Wade would tell L.W. that if he wanted V-Bucks, he would have to "sit on [Mr. Wade's] penis." Mr. Wade and L.W. would then pull down their pants and get on the bed. L.W. would squat down and Mr. Wade would "move" his penis so that it made skin-to-skin contact with L.W.'s anus. The contact would last three to five minutes but there was no penetration. L.W. would then pull up his pants and Mr. Wade would purchase the V-Bucks.

¶ 6    On one of the occasions, Mr. Wade made contact between his mouth and L.W.'s penis. That time, when L.W. requested V-Bucks, Mr. Wade asked him to put his mouth on Mr. Wade's penis, but L.W. said no. Mr. Wade then asked if he could "do the same thing to [L.W.]," and L.W. said yes. The contact lasted about two minutes before Mr. Wade stopped and they began playing Fortnite.

¶ 7    The last incident in which Mr. Wade made contact between his penis to L.W.'s buttocks took place on October 6, 2018. It followed the same pattern as the other occasions except that this time, L.W. saw "sperm" come out of Mr. Wade's penis. L.W. had not told anyone about the incidents because Mr. Wade said if he did so, L.W. would also get in trouble. However, on this date, L.W.'s father asked him how he obtained in-game currency and L.W. told him the truth. His father then confronted Mr. Wade and made him leave the house. L.W.'s father took L.W. to the police station the next morning.

¶ 8    On cross-examination, L.W. testified that during the timeframe in question, he visited his father's house on the weekends and had been doing so for about six or seven years. On October 6, 2018, his father "whooped" him with a belt "[b]ecause he was upset I didn't tell anybody what was going on."

¶ 9    Lawrence W., L.W.'s father and Mr. Wade's stepfather, testified that on October 6, 2018, he received an email from PlayStation Network indicating that a debit or cash purchase had been made on his account. Lawrence W. had not made the purchase himself, so he asked L.W. about it. L.W. reported that Mr. Wade made the purchase for him. When Lawrence W. asked him why he would do that, L.W. said that Mr. Wade "wanted him to sit on his" and he pointed to his private area." Lawrence W. confronted Mr. Wade and matched his card number with the receipt from

PlayStation. Lawrence W. then asked him to leave the house, which he did. The next morning, Lawrence W. filed a police report. On cross-examination, Lawrence W. denied having "whooped" L.W. He stated that at the time of the incidents, L.W. had been visiting on weekends for "maybe" two years.

¶ 10     Mr. Wade testified that he graduated from high school in 2017 and then "went to a transition program," which was "a place that teach[es] people with disabilities to be a little more independent." He also "went through" community college at the same time. He explained that his wheelchair was too big for the apartment where he lived with his mother and stepfather, so he would "get around" the home by crawling.

¶ 11     According to Mr. Wade, L.W. visited the apartment on weekends for about two years. Mr. Wade owned an Xbox but moved it from the apartment to his transition program in August 2018. He never played Fortnite with L.W. and never did anything of a sexual nature with him. He had seen Lawrence W. "whip" L.W. "[t]oo many [times] to remember off the top of my head."

¶ 12     Mr. Wade learned that his debit card had been used to purchase V-Bucks for Fortnite when Lawrence W. confronted him on October 6, 2018. Lawrence W. asked to see his debit card. Lawrence W. looked at the card, looked at his phone, and told him to "get the f*** out my house." According to Mr. Wade, he did not try to correct L.W. or rebut the allegation because, "[w]hen somebody tell you to get the f*** out their house, you get the f*** out their house." While he packed, Lawrence W. whipped L.W. with a belt, saying, "[Y]ou shoulda said no; you shoulda said no. You shoulda came back to me and told me what happened."

¶ 13    At the close of evidence, the jury found Mr. Wade guilty of predatory criminal sexual assault of a child and aggravated criminal sexual abuse. Mr. Wade then filed a motion for a new trial, which the trial court denied.

¶ 14    At sentencing, the trial court indicated that it had tendered a presentence investigation (PSI) report to the attorneys and asked for any changes or corrections. Defense counsel made a correction so that the PSI report would indicate that, when the case was resolved, defendant would live with two friends.

¶ 15    In aggravation, the State emphasized the facts of the case and urged the court to impose a significant sentence, "bearing in mind the predatory nature and the luring and grooming that occurred over the course of time to this defendant's stepbrother." In mitigation, the defense called Mr. Wade's grandmother, Vonica McCoy, who asked the court to consider imposing the minimum sentence, as she believed Mr. Wade would continue to strive to be the best person he could be. Defense counsel argued that, given Mr. Wade's physical condition, the minimum sentence would constitute a "substantial sentence." Counsel highlighted that Mr. Wade had no criminal history.

¶ 16    The court read and then orally summarized a letter Mr. Wade had submitted in lieu of speaking at the sentencing hearing. In the letter, Mr. Wade related that, growing up, he often was incapable of "making it to the toilet in time" in the middle of the night due to his disability. His mother, who thought he was just being lazy, would whip him with a belt. He wrote that he was wrongfully convicted of a crime that he did not commit and stated that he caught Covid in jail and was isolated in a cell by himself for 13 days.

¶ 17    The court orally summarized the PSI report, noting, among other things, that Mr. Wade had cerebral palsy and asthma, graduated from high school with a 3.2 grade point average, attended

some college, expected to live with two good friends upon release, and had no criminal history. The court then summarized the facts of the case, stated that it found L.W. and Lawrence W. very credible, and described Papafio's interview technique of L.W. as "textbook." In contrast, the court did not find Mr. Wade credible.

¶ 18 The trial court then reviewed the statutory factors in aggravation and mitigation, stating, in relevant part, as follows: "In aggravation the defendant's conduct did cause harm to a child but would say that the child will be harmed beyond any physical harm that happened but the psychological harm of the offense that the defendant committed on him." In further aggravation, the court stated that the sentence was necessary to deter others, and that Mr. Wade used his position of trust as a big brother and as a person with the ability to buy V-Bucks to entice L.W. into performing sexual acts. The court also noted that, in the PSI report, Mr. Wade maintained he had been wrongfully convicted.

¶ 19 In mitigation, the trial court noted that Mr. Wade had no history of delinquency or criminal activity. The court also stated that, due to Mr. Wade's cerebral palsy and confinement to a wheelchair, incarceration "might be even worse" for him than for anyone in general.

¶ 20 The trial court observed that Mr. Wade had asked for and received a number of accommodations during trial, stating, "[T]hat's not aggravation in any way." Specifically, the court noted his request to remove his mask while testifying, which required him to be located in the middle of the room, six feet from everyone present. The court also noted that he was allowed to use a microphone while testifying.

¶ 21 The trial court imposed an 18-year sentence for predatory criminal sexual assault of a child, stating that neither the minimum sentence nor a sentence "close to the upper range" of the 6-to-

60-year sentencing range would be appropriate. The court imposed a concurrent sentence of five years in prison for aggravated criminal sexual abuse. Mr. Wade now appeals this sentence.

¶ 22                                    ANAYLSIS

¶ 23    We note that we have jurisdiction to consider this matter, as Mr. Wade filed a timely notice of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017); see also *People v. English*, 2023 IL 128077, ¶ 25.

¶ 24    On appeal, Mr. Wade argues that his 18-year sentence is excessive given the nature of the offense, his "complete lack of criminal background," and his rehabilitative potential. He asserts his sentence does not reflect active consideration of the constitutional directive of returning offenders to useful citizenship or an appropriate balancing of rehabilitation and retribution. As relief, he seeks to have this Court either reduce his sentence to the statutory minimum or vacate the sentence and remand for a new sentencing hearing.

¶ 25    As an initial matter, Mr. Wade acknowledges his failure to file a motion to reconsider sentence and, therefore, his contention that his sentence is excessive is forfeited. The State also notes that Mr. Wade failed to make contemporaneous objections at sentencing. Nevertheless, he argues that we may reach his contention under either prong of the doctrine of plain error, or, in the alternative, because his trial counsel was ineffective for failing to preserve the issue for review.

¶ 26    The plain error doctrine is a narrow and limited exception to forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). To obtain relief under this doctrine, a defendant must first show that a clear and obvious error occurred. *Id.* A defendant must then show either (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant

a fair sentencing hearing. *Id.* The defendant has the burden of persuasion under both prongs of the plain error doctrine. *Id.*

¶ 27    A trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Great deference is afforded on appeal because the trial court is in better position to consider sentencing factors, including the defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age. *People v. Snyder*, 2011 IL 111382, ¶ 36. Although the trial court's consideration of mitigating factors is required, it has no obligation to recite each factor and the weight it is given. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. Absent some indication to the contrary, other than the sentence itself, we presume the trial court properly considered all relevant mitigating factors presented. *People v. Kindle*, 2021 IL App (1st) 190484, ¶ 67.

¶ 28    A sentencing determination will not be disturbed absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). Sentences that fall within the permissible statutory range may be deemed to be the result of an abuse of discretion only where they are "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210. In this case, the trial court sentenced Mr. Wade to 18 years' imprisonment. The sentencing range for predatory criminal sexual assault of a child, as charged here, is 6 to 60 years. 720 ILCS 5/11-1.40(a)(1), (b)(1) (West 2018).[1] Because the 18-year sentence imposed in this case is within the statutory sentencing range, it is presumed proper. See *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 105.

_____

[1] Although defendant is not challenging his five-year sentence for aggravated criminal sexual abuse, we note that the sentencing range for that crime is three to seven years. 720 ILCS 5/11-1.60(g), 5-4.5-35(a) (West 2018).

¶ 29    Mr. Wade does not dispute this presumption, but argues that the offense he committed was not deserving of a sentence three times longer than the minimum where he was only tried and convicted of one count of predatory criminal sexual assault of a child and the "additional, less serious incidents" that L.W. testified to took place over the course of only one month, despite the fact that he and L.W. resided in the same home for several years. He further asserts the trial court erroneously refused to consider mitigating evidence that demonstrated his rehabilitative potential.

¶ 30    Among this evidence, Mr. Wade notes that he lived a law-abiding life prior to the offense in question; he was only 20 years old at the time; he has cerebral palsy; he has strived to be a productive citizen; and, growing up, he experienced ridicule from his family and physical abuse from his mother, who would beat him with a belt when he was unable to make it to the restroom on time due to a limitation caused by his disability. He also asserts that, although he was frequently bullied, he graduated high school with a 3.2 grade point average, had a good relationship with all his teachers, and began work on a bachelor's degree in business administration. Additionally, he notes that he has the support of his grandmother and of two friends, with whom he will live when he is released. Mr. Wade argues that the trial court, when discussing factors in mitigation, only applied one: that he had no history of delinquency or criminal activity. As such, he asserts the court never actually considered whether he could be restored to useful citizenship.

¶ 31    The record demonstrates that the trial court was well aware of the mitigating factors identified by Mr. Wade on appeal, several of which were specifically mentioned at sentencing. The PSI report, which the trial court reviewed, reflected his age, his lack of criminal history, his medical conditions, and his poor familial relationships. The PSI report also indicated that he was bullied in school but had a good relationship with his teachers, his education, and the support of

two close friends, with whom he would live when the case was resolved. Defense counsel emphasized Mr. Wade's lack of a criminal background and argued that, given his physical condition, the minimum sentence would constitute a "substantial sentence." Mr. Wade's grandmother testified in mitigation, demonstrating her support. Finally, Mr. Wade related in his letter to the court, which the court summarized for the record, that his mother would whip him with a belt when he could not make it to the toilet, and that he contracted Covid in jail. As noted above, when mitigating factors are presented, we may presume that the trial court properly considered them absent some indication to the contrary. *Kindle*, 2021 IL App (1st) 190484, ¶ 67. We find no such indication here.

¶ 32    Further, we cannot substitute our judgment for that of the trial court merely because we would have weighed these factors differently. See *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. This is especially so where, as here, the record shows that in imposing Mr. Wade's sentence, the trial court thoroughly considered the information contained in the PSI report, the facts of the case, the statutory factors in aggravation and mitigation, Mr. Wade's character and attitude, and the likelihood that, due to his cerebral palsy and wheelchair use, incarceration might be "even worse" for him than for other people.

¶ 33    We are mindful of Mr. Wade's argument that, in assessing his character and attitude, the court "appeared to place more weight" on his requests for courtroom accommodations so that his testimony could be heard by the jury than on his history of law-abiding behavior, difficult family life, or educational history. He asserts that although the court said it did not consider the courtroom accommodations as aggravation, its "diatribe" about the accommodations was made instead of a meaningful analysis regarding whether he could be restored to useful citizenship. He maintains

that the court's focus on the accommodations while assessing his character and attitude was inappropriate, and that it was error for the court to have "relied on these interactions regarding accommodations as rehabilitative evidence, instead of the mitigating evidence that was before the court."

¶ 34    We disagree with Mr. Wade's characterization of the record on this point. In the course of explaining its sentencing decision, the trial court did note that it allowed Mr. Wade to remove his mask and use a microphone while testifying. However, the court specifically explained that Mr. Wade's request for and its granting of these accommodations were "not aggravating" and "not aggravation in any way." Given the court's lengthy explanation of its sentencing decision, as well as its express statements that it was not considering Mr. Wade's requests as aggravating, we cannot find that its brief discussion of the accommodations was inappropriate or that it affected its sentencing decision. Therefore, we find no abuse of discretion.

¶ 35    Finally, Mr. Wade argues the trial court improperly considered psychological harm to L.W. as an aggravating factor. He argues that this factor was inherent in the offense of predatory criminal sexual assault of a child and, therefore, it was an abuse of discretion for the trial court to consider it absent any evidence of a "greater degree of psychological harm." Specifically, defendant asserts that the State did not present a victim impact statement or evidence that L.W. had participated in counseling, had problems in school, or received any psychological treatment, and that the court never referenced L.W.'s testimony or demeanor at trial as evidence of psychological trauma.

¶ 36    Whether a trial court relied on an improper factor in imposing a sentence is a question of law subject to *de novo* review. *People v. Streater*, 2023 IL App (1st) 220640, ¶ 73. Mr. Wade is correct that a trial court may not consider as aggravating evidence a factor that is implicit in an

offense. *People v. Williams*, 2019 IL App (1st) 173131, ¶ 24. However, here, harm is not an element of, or inherent in, the offense of which defendant was convicted. See *People v. Kerwin*, 241 Ill. App. 3d 632, 636 (1993). Predatory criminal sexual assault of a child, as charged in this case, only requires that the defendant be 17 or older and commit an act of sexual contact with a victim under 13. 720 ILCS 5/11-1.40(a)(1) (West 2018). In addition, this court has repeatedly found that psychological harm suffered by child victims of sexual crimes is a proper consideration in aggravation at sentencing. See, *e.g.*, *People v. Nevitt*, 228 Ill. App. 3d 888, 892 (1992); *People v. Ulmer*, 158 Ill. App. 3d 148, 151 (1987); *People v. Burton*, 102 Ill. App. 3d 148, 153-154 (1981). Moreover, psychological trauma to a victim can be considered as an aggravating factor even without direct evidence of trauma. *People v. Reber*, 2019 IL App (5th) 150439, ¶ 94. Accordingly, the court did not err in considering the psychological harm to L.W. in imposing Mr. Wade's sentence. Because we do not find a clear or obvious error in the imposition of Mr. Wade's sentence, there is no plain error. See *Hillier*, 237 Ill. 2d at 545.

¶ 37     We now turn to Mr. Wade's alternate theory that trial counsel was ineffective for failing to preserve the excessive sentence argument for appeal also fails. To establish ineffective assistance, a defendant must show that counsel's representation was deficient and that, because of the deficiency, he suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show prejudice, a defendant must demonstrate that "the result of the proceeding would have been different." *People v. Henderson*, 2013 IL 114040, ¶ 11. As explained above, the trial court did not abuse its discretion in sentencing Mr. Wade. As such, he cannot establish that, had his trial counsel objected and filed a postsentencing motion, the result of the proceeding would have been different.

See *People v. Brown*, 2017 IL App (1st) 142877, ¶ 66. Thus, he cannot establish counsel was ineffective.

¶ 38                                    CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 40    Affirmed.