2025 IL App (1st) 230397-U

FOURTH DIVISION
MARCH 13, 2025

No. 1-23-0397

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 10720 |
| | ) | |
| CESAR OREJEL, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

ORDER

¶ 1    *Held*: The defendant's sentence is vacated where the trial court improperly imposed a seven-year firearm enhancement. The cause is remanded for a new sentencing hearing.

¶ 2    Following a jury trial, defendant-appellant Cesar Orejel was found guilty of first-degree murder and that of personally discharging a firearm that proximately caused death.  On appeal, Mr. Orejel argues that: (1) the trial court impermissibly imposed a 7-year firearm sentencing enhancement; (2) his sentence was excessive, and (3) the trial court erred by failing to request a supplementary presentence investigation report. For the reasons that follow, we vacate Mr.

Orejel's sentence and remand the cause to the circuit court for a new sentencing hearing.

¶ 3                                    BACKGROUND

¶ 4      Mr. Orejel was charged with six counts of first-degree murder (720 ILCS 5/9(a)(1), (2) (West 2000)) and eight counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (2) (West 2000)). The charges stemmed from a shooting that killed Cesar Bejar on August 16, 2000.

¶ 5                                    A. Jury Trial

¶ 6      Amy Fuenty testified that on the date of the incident, at approximately 6:30 or 7:00 p.m., she was walking home with her younger cousins when a man in a car attempted to talk to her. She identified the man as Mr. Bejar. She backtracked and walked down another street to avoid him. Mr. Bejar exited the car and tried again to talk to her. As she continued down the street, she passed four boys she knew from school. She identified three of them as Isaac, Lorenzo, and Roger. She did not know the fourth boy's name but had seen him at school. She identified Mr. Orejel in court as the fourth person.

¶ 7      As Ms. Fuenty passed by the four boys, one of them asked if she knew Mr. Bejar, who was following her. She told them that she did not. Mr. Bejar caught up with her and asked for her name. The four boys then walked up to them. Mr. Orejel "threw up" two fingers at Mr. Bejar and he became angry. Ms. Fuenty believed he was angry because Mr. Orejel's hand signal meant that he was a member of the "Two Six" street gang. Mr. Bejar and Mr. Orejel began arguing and then started a fist fight.

¶ 8       Ms. Fuenty took her cousins to a nearby gangway to get away from the fight. She heard someone "say to pass someone the gun," but was unsure of who that was. She then heard someone

say, "can you hand me the gun," then saw one of the boys from school, either Isaac or Lorenzo, step forward and act as if he was passing something. Ms. Fuenty couldn't tell if he had passed anything. She then heard three or four gunshots. Less than five minutes after the shots were fired, Ms. Fuenty exited the gangway and saw that Mr. Bejar had been shot and was lying in the street.

¶ 9     Roberto Gonzalez testified that he, Mr. Bejar, Hector Luna, and Joseph Zastawny were driving around in Mr. Bejar's sister's car. While they were driving, Mr. Bejar saw a girl that he liked and got out of the car to talk to her. Mr. Gonzalez remained in the car with Mr. Luna while Mr. Zastawny exited the car to talk to one of his friends. Mr. Gonzalez then saw three boys he knew from the neighborhood approach Mr. Bejar and the girl. He got out of the car and started walking toward the group.

¶ 10     Mr. Gonzalez stated that he saw Mr. Bejar "making a bunny" with his hands and explained that it was a sign for the "Two Six" street gang. Mr. Bejar "got pretty loud" and he and Mr. Orejel started a fist fight. Mr. Gonazlez then saw Isaac pull out a gun and shoot at Mr. Zastawny. As Mr. Gonzalez ran for the car, Issac started shooting again. He saw Mr. Orejel approach the car and shoot at Mr. Bejar three or four times.

¶ 11     Mr. Orejel testified that on the day of the incident, Mr. Bejar started the fight. During the fight, he thought he heard Roger say, "shoot him," though he was not looking at Roger when he heard this. He turned around and saw that Issac had pulled out a gun. Mr. Orejel stated that he ran into an alley and heard three shots go off.

¶ 12     The jury found Mr. Orejel guilty of first-degree murder and that he personally discharged a firearm that proximately caused Mr. Bejar's death. The trial court denied Mr. Orejel's motion for new trial.

¶ 13    The sentencing hearing was held on May 18, 2005. In aggravation, the State noted that Mr. Orejel had a juvenile weapons offense, that his girlfriend had obtained an order of protection against him, and that this case was gang related. In mitigation, the defense noted that Mr. Orejel was getting his GED.

¶ 14    In ordering Mr. Orejel's sentence, the trial court noted that he was 16 years old at the time of the incident and that it involved gang territory. Merging some of the counts, the trial court sentenced Mr. Orejel to 33 years' imprisonment on one count of first-degree murder, plus 25 years for the firearm enhancement, for a total of 58 years' imprisonment.

¶ 15                                    B. Direct Appeal

¶ 16    On direct appeal, this court affirmed Mr. Orejel's conviction, rejecting his claims that the State failed to prove him guilty beyond a reasonable doubt and that he was denied a fair trial by the introduction of gang evidence. *People v. Orejel*, No. 1-05-1652 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 17                              C. Post-Conviction Petitions

¶ 18    Mr. Orejel filed a *pro se* post-conviction petition, claiming ineffective assistance of trial and appellate counsels and that the 25-year firearm sentence enhancement was unconstitutional. The trial court dismissed the petition at the first stage. This Court affirmed that dismissal. *Orejel*, 1-09-2532 (2010) (unpublished order under Illinois Supreme Court Rule 23). Mr. Orejel filed a motion for leave to file a successive postconviction petition, arguing that his 58-year sentence was a *de facto* life sentence and violated the eighth amendment pursuant to *People v. Buffer*, 2019 IL 122327, and *Miller v. Alabama*, 567 U.S. 460 (2012). The trial court advanced his petition to the second stage and the case was remanded for resentencing.

¶ 19                               D. Resentencing

¶ 20     The resentencing hearing was held on October 25, 2022. A presentence investigation report was not prepared. Mr. Bejar's brother-in-law and son testified and read victim impact statements. Mr. Orejel's sister testified on his behalf, recounting their conversations following the incident and Mr. Orejel's expression of remorse. Mr. Orejel testified that he received four tickets since his incarceration for putting a curtain over the bathroom, not leaving commissary on time and for having a radio. He had not joined a gang while in custody and he expressed remorse for his actions on the day of the incident.

¶ 21     At the conclusion of the arguments, the court stated that it had considered the factors presented in aggravation and mitigation. In aggravation, the court noted the circumstances of the case and that a fist fight escalated into a murder. In mitigation, the court acknowledged Mr. Orejel's expression of remorse and found it to be genuine. The court also mentioned that during his 20 years of incarceration, Mr. Orejel had only received four tickets, which led it to believe that there was potential for rehabilitation. The court stated while weighing the possibility of rehabilitation, it had to hold Mr. Orejel responsible for his actions and impose a sentence necessary to protect the public. While acknowledging that there were "aggravating factors that would justify [Mr. Orejel] being sentenced to more than 40 years" the court stated that it believed Mr. Orejel was "not the same person as he was then."

¶ 22     The court then sentenced Mr. Orejel to 40 years' imprisonment. In imposing the firearm enhancement, the court clarified that it was only reducing the firearm enhancement to 7 years while leaving "the original sentence of 33 years for the offense of murder" in effect. Mr. Orejel filed a motion to reconsider sentencing which the court denied. Mr. Orejel now appeals.

¶ 23                                    ANALYSIS

¶ 24    We note that we have jurisdiction to consider this matter, as Mr. Orejel filed a timely notice

of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017); see also *People v. English*, 2023 IL

128077, ¶ 25.

¶ 25    Mr. Orejel argues that: (1) the firearm enhancement sentence of seven years was not

authorized by statute and should be vacated; (2) the near *de facto* life sentence was excessive; and

(3) the trial court erred by not ordering presentencing investigation report for the new sentencing

hearing.

¶ 26                            A. Firearm Enhancement

¶ 27    Mr. Orejel asserts that the trial court's imposition of a 7-year firearm enhancement was

illegal because it was below the statutory minimum of 25 years. This is an issue we review *de*

*novo*. See *People v. Harris*, 203 Ill. 2d 111, 116 (2003) (where the construction of a statute is a

question of law, the standard of review is *de novo*).

¶ 28    The sentencing range for first-degree murder is 20 to 60 years' imprisonment. 730 ILCS

5/5-4.5-20(a) (West 2022). When a defendant is also found to have personally discharged a firearm

that proximately caused death, a firearm enhancement is applied, which has a sentencing range of

25 years to life. 730 ILCS 5/5-8-1(d)(iii) (West 2022). It is the trial court's discretion whether to

impose a firearm enhancement for defendants who were juveniles at the time of the offense. 730

ILCS 5/5-4.5-105(e) (West 2022). A court does not have the authority to impose a sentence that

does not conform with statutory guidelines. *People v.* White, 2011 IL 109616, ⁋ 20. A court

exceeds its authority when it orders a lesser or greater sentence than that which the statute

mandates. *Id.* Such a sentence is illegal and void. *Id.*

¶ 29     Both parties agree that the trial court improperly imposed a firearm enhancement lower than the statutory minimum of 25 years but disagree on the appropriate remedy. Mr. Orejel contends that this court must vacate the sentence and remand with the instructions to impose the base sentence only, or remand for a new sentencing hearing. The State argues that remand is unnecessary, as this court may modify the mittimus to remove the language regarding the firearm enhancement. See Ill. S. Ct. R. 615(b)(1) (eff. Jan. 1, 1967) ("On appeal, the reviewing court may reverse, affirm, or modify the judgment or order from which the appeal is taken.")

¶ 30     In support of his argument, Mr. Orejel cites *People v. Baker*, 341 Ill. App. 3d 1083, 1090, (2003) where this court vacated the mandatory firearm enhancement because it violated the proportional penalties clause. There, the defendant was convicted of kidnapping while armed with a firearm, or aggravated kidnapping (720 ILCS 5/10-2(b) (West 2000)), and armed violence (720 ILCS 5/33A-2(a) (West 2000)). *Id.* at 1085. This court found that the two offenses were substantively identical, yet were punished with disparate penalties, violating the proportional penalties clause. *Id.* at 1089-90. As a remedy, the court vacated the 15-year enhancement from the aggravated kidnapping conviction, leaving the base sentence of 25 years. *Id.* at 1090. Mr. Orejel requests we employ the same remedy and vacate the 7-year enhancement, leaving the 33-year base sentence intact, or in the alternative, remand for a new sentencing hearing.

¶ 31     The State maintains that the sentence should remain at 40 years' imprisonment and that only a change in the mittimus to strike the firearm enhancement should be required. The State insists that Mr. Orejel's sentence should be treated as one aggregate sentence. In support, the State cites *People v. Barnes*, 364 Ill. App. 3d 888 (2006). There, this court clarified that though the trial court referred to a sentence associated with one offense and a sentence enhancement as separate,

they are not independent prison terms, but a single term. *Id.* at 897. This court also noted that the trial court "explicitly indicated" that it took the mandatory enhancement provision into account in imposing the original sentence, making it more difficult to view the sentence as divisible into separate parts. *Id.*

¶ 32 We agree with the parties that the court was not permitted to impose a seven-year firearm enhancement. See *White*, 2011 IL 109616, ¶¶ 20-21 (where the defendant's sentence did not conform to statutory requirements, the sentence was deemed void). However, we disagree with their proposed remedies. Regarding Mr. Orejel's argument, *Baker*'s holding did not create a mandate for his sought remedy. See *People v. Ridley*, 345 Ill. App. 3d 1091, 1093, (2004), *vacated on other grounds*, 217 Ill. 2d 586 (2005). ("This court did not hold, as defendant contends, the defendant's sentence in *Baker* had to be set 25 years as a result of subtracting the 15-year enhancement from the 40 years imposed initially by the trial court."). We also recognize, as the State argues, that we may modify the sentencing order under Rule 615(b)(1) if we find the original sentence to be unlawful or an abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 378 (1995).

¶ 33 The power to modify a sentence should be exercised "cautiously and sparingly." *Id.* (quoting *People v. O'Neal*, 125 Ill. 2d 291, 300 (1988)). When deciding whether to choose a new sentence or to remand for resentencing, we must "consider all of the surrounding circumstances of each particular case," including (1) whether there was additional evidence to offer on remand, (2) whether the proof presented to the trial court the first time was "relatively straightforward and uncomplicated," and (3) whether remand for resentencing would unnecessarily burden the court and the parties. *Id.*

¶ 34    First, additional evidence may be offered on remand through a supplemental presentence investigation report (PSI), as one was not ordered prior to the resentencing hearing. We acknowledge that it is not required for sentencing hearings upon remand and therefore the failure to submit same is not error. *People v. Munson*, 171 Ill. App 3d 274, 277 (1988). A PSI could however provide information outside of Mr. Orejel's disciplinary record, such as any employment or education obtained during his incarceration.

¶ 35    Regarding the second factor, we do not find the record to be so straightforward to preclude a new sentencing hearing. In imposing the sentence, the trial court indicated its intention to keep the "original 33-year sentence" intact while "reducing the firearm enhancement to seven years". The court incorrectly believed the statute governing the enhancement "allows [the trial court] to do that" because the firearm enhancement is discretionary for juveniles. It is unclear whether it was more important to the court to keep Mr. Orejel's base sentence intact or to impose a 40-year sentence. The trial court is in the better position to resolve this question.

¶ 36    Finally, we are mindful of the burden an additional sentencing hearing imposes upon the circuit court and particularly Mr. Bejar's family. We must, nonetheless, ensure that Mr. Orejel is given a lawful sentence that reflects the trial court's careful consideration of all appropriate factors. "It has been emphasized that the trial court is in superior position to assess the credibility of the witness and to weigh the evidence presented at the sentencing hearing." *Id.* at 373. We agree. Based on the totality of the circumstances, remanding for resentencing is the appropriate course of action. Therefore, we vacate Mr. Orejel's sentence and remand for a new sentencing hearing.

¶ 37                                                CONCLUSION

¶ 38    For the foregoing reasons, we vacate Mr. Orejel's sentence and remand the cause to the circuit court of Cook County to conduct a new sentencing hearing.

¶ 39    Reversed and remanded.